# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1700

GILBERT ARREOLA,

*Plaintiff-Appellant*,

*v.*

SALVADOR GODINEZ, Director, Cook County Jail,
THOMAS DART, Cook County Sheriff,
ERNESTO VELASCO, former Director,
Cook County Jail, and COOK COUNTY, Illinois,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 2854—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 25, 2008—DECIDED OCTOBER 14, 2008

Before BAUER, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* While incarcerated at Hill Correctional Center ("Hill") in Galesburg, Illinois, Gilbert Arreola broke his ankle during a recreational soccer game. Five days later, he was transferred to Cook County Jail ("the Jail") for a temporary stay, so that he could testify in

unrelated judicial proceedings at the Cook County Court-house. Dissatisfied with the medical care and conditions of confinement at the Jail, Arreola filed a five-count complaint under 42 U.S.C. § 1983. The first two counts were the subject of a separate appeal, which we decided on July 14, 2008. See *Arreola v. Choudry,* 533 F.3d 601 (7th Cir. 2008). There, we rejected Arreola's contention that he was entitled to a new trial on his claim that the medical treatment he received at Hill from Dr. Mohammed Choudry violated his rights under the Eighth Amendment.

The present appeal comes to us under FED. R. CIV. P. 23(f), which permits courts of appeals to accept interlocutory appeals from decisions granting or denying class certification. Arreola wishes to serve as the class representative for a class of inmates who have been injured by the Jail's policy of denying crutches in certain areas of the Jail to the inmates who live there. Arreola argues that this "Crutch Policy" violates the Eighth and Fourteenth Amendments because it mandates deliberate indifference to the serious medical needs of inmates and creates unconstitutional conditions of confinement. Because he is seeking, on behalf of the putative class, both injunctive relief and damages, Arreola sought certification under FED. R. CIV. P. 23(b)(2) and (b)(3). After he filed his motion for class certification, the district court bifurcated the proceedings, severing Arreola's individual claims against Dr. Choudry from his class claims against Cook County and the responsible officials at the Jail ("the County defendants" or "the County").

In an order dated January 30, 2007, the district court denied certification for the proposed Rule 23(b)(2) class

for injunctive relief and denying without prejudice the proposed Rule 23(b)(3) class for damages. Arreola appealed under Rule 23(f), and in an order issued March 21, 2007, we agreed to accept his appeals. We conclude that the district court properly denied Arreola's motion for certification of a Rule 23(b)(2) class for injunctive relief, but we remand the case for further proceedings on his individual claims and his motion for certification under Rule 23(b)(3).

## I

Arreola injured his ankle at Hill on April 22, 2001. The medical treatment he received in the immediate aftermath of his injury was the subject of his claim against Dr. Choudry, and so we do not discuss it further. What concerns us is the sequence of events that began on April 27, five days after Arreola's injury, when he was temporarily transferred to the Jail for purposes of testifying in post-convictions proceedings. While at the Jail, Arreola was housed in Division Nine. Like almost all housing areas in the facility, Division Nine was governed by an official Jail policy that prohibits inmates housed there from using crutches or canes whenever they are in the "living units." Instead, those medical devices—to which inmates can obtain access only if a doctor has prescribed their use—are "to be stored in the officer's control room" at all times when the inmate is in the living units. When inmates are "off of the living units," they may use their crutches and canes.

The "living units" include the inmates' cells, a dayroom, bathrooms, and a shower area. The inmates spend almost

all of their time in these areas; they must receive authorization to leave if, for example, they wish to visit the law library or a courthouse. It is undisputed that under the Policy, any inmate who has been prescribed crutches or a cane for any reason (sprain, break, amputation, surgery, fracture, etc.) cannot use his devices while in the living units.

The Policy is only one page long. The copy in the record applies to "Division IX," but it is undisputed that the same "Divisional Policy" applied to all but two of the 11 divisions in the Jail. The version we have went into effect in January 1996 and was revised in November 2000. The text is divided into "GENERAL RESPONSIBILITIES" and "SPECIFIC RESPONSIBILITIES." The former provides:

> Handicapped individuals are those who, by reason of their infirmities, may be unable to participate in typical institutional programs and who may require special medical care or physical assistance to function in the institutional setting. Because Division Nine is not handicapped accessible on the living units (*i.e.* bathrooms, showers & water fountains)[,] the Department has designated Division Eight as the division where physically challenged inmates are housed in a manner that provides for the inmates safety and security. Division Nine is not designed for handicapped inmates use and the Division doesn't provide for integration of the handicapped with the inmates in general population.

(All caps omitted; original punctuation reproduced.) The "Specific Responsibilities" section adds the following guidelines for implementing the Policy:

1. Division nine only houses inmates who are ambulatory. However, the division Is handicap accessible foe staff and visitors.

2. Crutches/canes are permissible walking aids off of the living units.

3. Crutches/canes are not to be on the living units. Crutches/canes are to be stored In the officer's control room.

4. If an inmate is unable to use the divisions resources (cells, bathrooms, showers, Stairs, etc.) The watch commander shall be notified and a transfer to division Eight initiated.

(Original spelling and punctuation reproduced.)

Thus, the Policy specifies that the only way for inmates to obtain access to crutches or canes in the living units is to be transferred to Division Eight, the Handicapped Unit. There, the facilities are adapted for the handicapped, and inmates may keep their crutches and canes with them while in the living units. According to the testimony of two attending physicians, who are employed by Cermak Health Services to provide medical care to the Jail's prisoners, decisions about which inmates are "handicapped" (and thus should be transferred to Division Eight) are left to the discretion of the corrections officers at the Jail; medical professionals, the prison doctors stated, have no authority to change the inmates' housing assignments. Thus, Arreola is claiming, the Policy does not assure that inmates needing crutches are moved to the Division that can accommodate them.

The defendants dispute the accuracy of that testimony, contending that Cermak Health Services and its physicians have the responsibility and authority to determine where an inmate or detainee is placed—and that, in this case, Cermak sent Arreola to Division Nine, not to the infirmary or to Division Eight. (We are not told directly, but we presume that the infirmary is the other division of the Jail in which the Policy does not apply.) This factual dispute ultimately is not material to Arreola's appeal, but we note that the Policy itself does not resolve it, for its use of the passive voice in specific responsibility 4 obscures who determines that an inmate is not ambulatory and who notifies the watch commander to initiate a transfer.

While at the Jail and subject to the Policy, Arreola did not have access to his crutches at any time while in the living units. He continually asked to be given his crutches or to be transferred to another division where he could use them, but officers at the Jail denied his requests. Their only reason for refusing to let him use his crutches in Division Nine was the Policy; the record reveals no reason why they refused to send him to Division Eight. Arreola thus was forced to try to walk on his broken ankle, despite repeated orders from the Jail's physicians that the ankle should not bear any weight. As a result, he experienced extreme pain. His inability to use the crutches also hindered the proper healing of his injury and caused his cast to deteriorate as a result of the excess pressure he had to apply to it. When Arreola was taken to the Cook County Courthouse to testify in his judicial proceedings, he was permitted to use his crutches

only after he left the living units. His complaint alleges that, at the conclusion of his hearing as he was being escorted back to the Jail, he slipped on a stairwell in the courthouse, further aggravating his injury and breaking apart his already-deteriorated cast. He believes that this fall was caused in part by the fact that he never learned properly to use his crutches, because he was denied access to them at the Jail.

Arreola's stay at the Jail lasted about one month; on May 21, 2001, he was moved to a facility in Joliet, Illinois; he then went back to Hill on May 23. He alleges that during his time at the Jail, he tried several times to file grievance forms or complaints about the Policy, but those efforts were thwarted. Once he was back at Hill, he was able to file the relevant grievances, but they were denied. Having exhausted his administrative remedies, he turned to the federal courts for relief.

Arreola began these proceedings *pro se* in April 2003. When he filed his complaint, he also asked the court to recruit counsel for him. The district court obliged, but after two years of minimal progress on Arreola's claims, the court granted counsel's motion to withdraw. Shortly thereafter, on March 29, 2005, the court recruited a new attorney, Laura Cullison, to represent Arreola. She has done so ably and remains his counsel on appeal.

Once Cullison got up to speed on the case, she moved for leave to file a second amended complaint adding class-action allegations to Arreola's complaint. Over the County's objections, the district court granted her request, and in the same order, dated December 13, 2005, the

court severed counts I and II (individual claims against Dr. Choudry) from counts III, IV, and V (class claims against the County and claim for indemnification). Arreola filed his second amended complaint the following day, December 14.

The County answered the complaint in April 2006. Arreola's motion for class certification came one month later, along with the close of fact discovery. Two weeks later, on May 26, the County moved for summary judgment and requested a stay of class certification pending the district court's resolution of the motion for summary judgment. Arreola asked for a stay of the County's motion until the close of expert discovery and for briefing to proceed on his motion for class certification. The district court granted the County's request, stayed the class-certification motion, and set a briefing schedule on the summary-judgment motion. On October 10, Arreola filed his response to the County's motion, as well as a cross-motion for partial summary judgment on his claim alleging deliberate indifference by the County defendants acting in their official capacities. Arreola's response included a rebuttal to the County's argument that Arreola lacked standing to pursue injunctive relief, because he was no longer housed at the Jail, and emphasized Arreola's recent disclosure of 10 potential additional class members.

The court issued its order a few months later, on January 30, 2007. The order did several things: it granted in part and denied in part the County's motion for summary judgment; it denied Arreola's cross-motion for partial

summary judgment; and it denied Arreola's motion for class certification, in part without prejudice. The court decided that because Arreola was no longer incarcerated at the Jail, he lacked standing to pursue injunctive relief. With respect to Arreola's claim for damages, however, the court concluded that the inquiry was too fact-specific to be decided as a matter of law, and so it denied both sides' motions for summary judgment. It also held that defendant Ernesto Velasco, the former Director of the Jail and the only County defendant sued in both his official and individual capacities, was not entitled to summary judgment or qualified immunity at that stage.

After explaining its rulings on the parties' motions for summary judgment, the court addressed class certification. It rejected the Rule 23(b)(2) class for injunctive relief on the basis of its prior determination that Arreola lacked individual standing to pursue an injunction. The court then denied, without prejudice, the certification of a Rule 23(b)(3) class for damages, because of its doubts at that point in the proceedings about whether Arreola could show that his claims were typical of the class as a whole, that class issues predominated, and that a class action was a superior, fair, and efficient method for resolving the controversy. The order noted that "[i]f Arreola wishes to pursue class certification on the damages claim, he must renew his motion by no later than February 20, 2007." Arreola did not do so; instead, he requested permission from this court to file an interlocutory appeal under Rule 23(f), challenging the denial of certification for each class, and those issues are now before us.

While his appeal was pending, however, the district court set a trial date for the individual damages claims against the County defendants that had survived summary judgment. Arreola moved to stay those proceedings pending the outcome of this appeal, but the district court denied his request. On August 22, 2007, he tried his luck in this court, invoking Rule 23(f) in support of a motion to stay the trial. After receiving an explanation from the district court, this court issued an order on September 5, 2007, granting Arreola's motion to stay trial on his individual claims against the County pending resolution of this appeal.

## II

To obtain class certification, a plaintiff must satisfy the requirements of FED. R. CIV. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982); *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Failure to meet any of the Rule's requirements precludes class certification. *Harriston*, 992 F.2d at 703. Recognizing that Rule 23 gives the district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate," this court reviews such decisions deferentially, *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001), and will "reverse a district court's ruling regarding class certification only when we conclude that the district court abused its discretion in reaching its decision." *Harriston*, 992 F.2d at 703.

Though he acknowledges the general applicability of the abuse-of-discretion standard of review, Arreola contends that where, as here, the district court has denied the proposed Rule 23(b)(2) class because it has determined that the plaintiff lacks standing, our review of the underlying standing question should be *de novo*. In general he is correct that "[w]hether a party has standing to bring a 'case or controversy' before the court is a question of law that this court reviews *de novo*." *Winkler v. Gates*, 481 F.3d 977, 982 (7th Cir. 2007). If factual findings entered into the district court's decision, we review those for clear error. *Id.*

We agree with Arreola that the question of his standing is an antecedent legal issue that we must resolve before proceeding to our evaluation of the district court's class certification decision. See *Payton v. County of Kane*, 308 F.3d 673, 676 (7th Cir. 2002) (in the context of appellate review of denial of class certification, explaining that legal questions of standing and mootness receive *de novo* review). Compare *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 340 (7th Cir. 1997) ("Ordinarily a denial of class certification is reviewable for abuse of discretion. But here the district court has determined that the FDCPA bars serial class action suits. This determination is purely legal, and we review *de novo*." (citations omitted)).

Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff

is *entitled to relief*. As we noted in *Payton*, *supra*, "Article III requires that the plaintiff has suffered an injury in fact which is fairly traceable to the challenged action of the defendant and likely, as opposed to merely speculative, to be redressed by a favorable decision." 308 F.3d at 677 (internal quotation marks omitted); see also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). When deciding questions of standing, courts must look at the case as a whole, rather than picking apart its various components to separate the claims for which the plaintiff will be entitled to relief from those for which he will not. If the court becomes too enmeshed in the plaintiff's entitlement to relief, it will stray beyond the standing inquiry into the merits. Here, the district court appears to have made just this error when it found that Arreola "lacked standing *to pursue injunctive relief*" as a result of the fact that he was no longer housed at the Jail and was unlikely to return at all—much less to return with a lower-extremity fracture that would require the use of crutches or a cane—such that he would be reasonably likely to be subjected to the Policy again. As we explain, the district court was correct to see a problem with this part of Arreola's case, but the problem is not one of standing.

Arreola satisfied each of the Article III requirements for standing to sue. His complaint alleged an "injury in fact" that is traceable to the Crutch Policy and can be redressed by a lawsuit. See *Payton*, 308 F.3d at 677. While it is true that he may no longer be entitled to all types of relief that he requested, the law does not preclude a

plaintiff from filing suit simply because some forms of relief may be unavailable, or indeed because in the end he cannot prove that he is entitled to any relief. Just as we observed in *Payton*, the inherent problem with the idea of "standing to bring a class action" is that it "conflat[es] the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative[.]" *Id.* Though we recognize that prior decisions of this and other courts have sometimes used this kind of terminology, nothing has turned on it. In our view, it is best to confine the term "standing" to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria. *Cf. Harriston*, 992 F.2d at 703 ("To have standing to sue *as a class representative*, the plaintiff must be part of the class and possess the same interest and suffer the same injury as the class members." (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (emphasis added) (internal quotation marks omitted))); *Holmes v. Fisher*, 854 F.2d 229 (7th Cir. 1988).

We accordingly conclude that Arreola did have standing to pursue his lawsuit. Whether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions, to which we will return shortly.

### III

### A

Before addressing the requirements of Rule 23, we must dispose of two arguments that the County defendants have asserted. First, they contend that the district court should not have allowed Arreola to file his second amended complaint—which first asserted the class claims—primarily because Arreola did not attempt to file it until two and one-half years after commencing his suit. This was a matter, however, well within the district court's discretion. See FED. R. CIV. P. 15(a). As the County acknowledges, district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile, see *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 759 (7th Cir. 2002). But, even assuming that any of those conditions were present here (and we see none), the district court's discretion under Rule 15(a) is not a one-way street: it applies equally to decisions to deny *and* to grant leave to amend. In response to the County's accusation that Arreola was "dilatory" in raising his class claims, the district court stated that although "this has delayed a long time . . . [t]hat is not Mr. Arreola's fault," because his first lawyer dropped the ball, which led the court to recruit new counsel, who, understandably, needed "time . . . to get up to speed." For the same reasons, we reject the County's attempt to persuade us that Arreola's timing ran afoul of Rule 23(c).

The County also contends that the second amended complaint should not have been allowed because the class claims do not "relate back" to Arreola's initial complaint. It reasons that the unnamed putative class members are time-barred under the class action tolling doctrine established by *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and *Crown Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983). But the district court addressed this point, finding that relation back is appropriate here because "it has been clear from the outset, even from the pro se complaint, that Mr. Arreola was challenging the same policy that is at issue in the class action claim." Under Rule 15(c)(1)(B), nothing more is required. That rule provides that an amended pleading relates back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." (We note as well that although the amended pleading changed the potential group of plaintiffs in the case, it did not change the party or the naming of the party *against whom* the claim was asserted, and thus there is no problem under Rule 15(c)(1)(C).) The district court did not abuse its discretion in finding relation back to be appropriate here.

Finally, the County asserts that the second amended complaint failed properly to plead numerosity for purposes of Rule 23(a)(1). This argument goes nowhere. The County criticizes Arreola's numerosity allegations as being nothing but "bare bones," but under the federal notice-pleading regime, that is all that is required. The County then argues that Arreola failed to *establish*

numerosity, but in doing so it moves from an argument about the pleadings to a question of the merits (at a minimum, the merits of the class-certification issue), and so we need not let the County's challenge to the propriety of the second amended complaint detain us any longer.

The second major preliminary argument that the County raises is one based on a consent decree entered in the case of *Duran v. Brown* (formerly *Duran v. Dart*), No. 74 C 2949 (N.D. Ill. Nov. 14, 2003). According to the County, the decree requires all claims for injunctive relief regarding conditions in the Cook County Jail to be brought as contempt actions in the *Duran* case, which was then pending in the Northern District of Illinois. The County concedes that the *Duran* decree applies to pretrial detainees and that Arreola was a post-conviction inmate during his temporary stay at the Jail. Nonetheless, it says, he was somehow bound to the decree as a "third-party beneficiary."

This argument is convoluted and ultimately unavailing. First, if Arreola is, as the County argues, a third-party beneficiary to the decree, we have trouble seeing how his status as a "beneficiary" would operate to *preclude* him from filing his claim against the County defendants. Second, and more crucially, the consent decree provides no basis for denying Arreola's pursuit of class certification. The decree stems from a case brought in 1974 by pretrial detainees to address overcrowding problems at the Jail. The order on which the County relies was issued several months *after* Arreola filed his lawsuit, and so it

would apply to Arreola only if he someday returns to the Jail. That, of course, is the very event that the County asserts is so unlikely to occur that Arreola has no current stake in an action to enjoin the Crutch Policy. Arreola also points out that the County raised this argument in the district court; Arreola moved to strike, but the district court declined to issue a ruling either way, and so we have no findings from the lower court addressing whether the decree applies here or not.

We hold that the *Duran* decree has no bearing on this case. It addressed overcrowding and related issues (such as food service, personal hygiene, access to the law library, exercise, and emergency situations), none of which comes close to the Jail's policy with respect to medical devices in the living units.

B

We are now ready to address the proper subject of this Rule 23(f) appeal: whether the district court erred in its class-certification rulings. A plaintiff seeking class certification must satisfy all of the criteria enumerated in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and fall within at least one subsection of Rule 23(b). Arreola asserts that he has satisfied Rule 23(a) and that the class he would like to represent is a hybrid one covered by both Rule 23(b)(2) and 23(b)(3).

1

Although there is considerable overlap for purposes of Rule 23(a) between Arreola's proposed class actions under Rule 23(b)(2) for injunctive relief and under Rule 23(b)(3) for damages, we think it best to analyze the two separately. We begin with his proposed effort to represent a class of inmates at the Jail who want injunctive relief against the Crutch Policy—his proposed Rule 23(b)(2) class.

*Rule 23(a)(1): Numerosity*

The County argues that Arreola failed to establish this requirement by neglecting to provide detailed and specific information to the trial court about the potential number and identities of possible class members. It is true that the party supporting the class cannot rely on "mere speculation" or "conclusory allegations" as to the size of the putative class to prove that joinder is impractical for numerosity purposes. *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990). But the County's argument here is based on its contention that Arreola never identified a single potential class member and never provided sufficiently detailed testimony from the prison physicians to support the existence of a definitive, identifiable class.

The record does not bear out the County's allegations. As early as October 10, 2006, Arreola provided the names and last-known addresses of 14 potential class members. We can assume that 14 would not be enough, but that is

not the only evidence in the record. The physicians' testimony supports a much larger estimate. For example, an attending orthopedist who supervises the Cermak Orthopedic Clinic one day per week stated in his deposition that, on average, he sees at least one inmate each week who has a fresh fracture requiring a prescription for crutches. Arreola's proposed class includes inmates affected by the Policy as of mid-2001, meaning that the number of inmates with fractures for whom this doctor has prescribed crutches would exceed 350. And that is just one physician, who supervised the orthopedic clinic one day each week. Moreover, because the district court decided the summary-judgment motions before allowing full briefing and argument on the class-certification issues, Arreola and his counsel did not have an opportunity to develop a complete factual record or to present alternative arguments relating specifically to class certification. The record as it stands shows that Arreola either already has established numerosity, or at a minimum that he has shown enough to warrant further discovery on the issue.

*Rule 23(a)(2): Commonality*

Arreola argues that most of the issues involved in this case, and especially the constitutionality of the Crutch Policy, are common to all potential class members. With respect to his proposed (b)(2) class, we agree with him. The County does not seem to contest this point; its arguments about commonality focus only on the problems it sees with the potential (b)(3) class, to which we return below.

*Rule 23(a)(3): Typicality*

With respect to typicality, the County's argument echoes its point on numerosity: because Arreola did not provide "the name of a single putative class member who is similarly situated to Arreola," it asserts, he cannot possibly show that his claims are "typical" of other class members' claims. We have summarized typicality analysis as follows:

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quotation marks and citations omitted). According to the County, Arreola cannot establish typicality because he has not shown that the class is "sufficiently identifiable or definite." But that is not part of the typicality inquiry; it is a complaint about class definition. The County has not argued that the class definition was too broad, or too vague, for it to know who its adversary is, and it is too late now to raise a new argument. As far as typicality is concerned, we are satisfied that Arreola has raised claims that "arise[] from the same event or practice or course of conduct" as his own.

Once again, the record does not support the County's accusations that Arreola's evidence lacks sufficient detail

to establish typicality. As we mentioned earlier, by October 10, 2006, Arreola had filed documents showing that he was in the same boat as hundreds of patients with fresh or acute lower-extremity fractures who needed crutches. He also produced the deposition testimony of several officers working at the Jail, both in Division Nine and in other divisions, who testified that they never allowed inmates to keep their crutches in the living units, and, crucially, that they never had transferred an inmate to Division Eight (the Handicapped Unit) because the inmate had been prescribed crutches. The physicians who testified also said that they had no authority to change inmates' housing assignments. If believed, that would show that any decision to transfer an inmate or not to transfer was, *de facto,* the responsibility of the corrections officers. Arreola's claims are typical of those of his potential fellow class members.

### Rule 23(a)(4): Adequacy of Representation

It is here that Arreola's efforts to serve as class representative for a Rule 23(b)(2) class meet their demise. At this point, we return to the district court's analysis of the question whether Arreola possesses a sufficient personal stake in prospective relief to be an adequate representative for a class seeking to enjoin the Policy. As the district court found (using "standing" terminology), while Arreola has a concrete stake in his claim for damages, his interest in prospective relief is too tenuous (and was too tenuous even when he first filed this lawsuit) to permit an award of injunctive relief on his individual claims. By the

time Arreola filed this lawsuit, he was no longer at the
Jail. The likelihood that he will return to the Jail *and* will
once again be suffering from a lower-extremity fracture
requiring crutches is too speculative to support a right to
an injunction on his part. As we stated in *Holmes*:

> To permit the certification of a class headed by a
> "representative" who did not have a live controversy
> with the defendant on the day the suit began would
> be to jettison the last vestiges of the case-or-contro-
> versy requirement in class actions. And why? Holmes
> can pursue his claim for damages, and the precedent
> will set the rule to be followed in the future. Or some
> other litigant may file suit with a live claim. There is
> no need to throw away a venerable constitutional
> rule just to retain a replaceable champion.

854 F.2d at 233.

Arreola argues that because (1) the Jail typically serves
only as a temporary housing facility for inmates, (2) the
nature of injuries requiring a prescription for crutches
is often transitory, and (3) the Prison Litigation Reform
Act strictly requires prisoners to exhaust their admin-
istrative remedies before filing a lawsuit, the unique
circumstances of this case render it highly unlikely that
any "champion" could emerge to "replace" Arreola. We
are not convinced: indeed, some people need crutches
for a much longer period of time than Arreola
apparently did, and we cannot conclude that it would be
impossible for a more suitable representative of a Rule
23(b)(2) class to emerge. This also means that, contrary
to Arreola's arguments, this case is not a good candidate

for application of the "capable of repetition, yet evading review" concept. See *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980). The district court did not abuse its discretion in declining to certify Arreola as the representative for an injunctive-relief class.

2

Arreola's pursuit of certification for a damages class under Rule 23(b)(3) is tied up, to a certain degree, with his individual claim for damages. As we noted earlier, the district court denied certification of his (b)(3) class without prejudice, explaining that Arreola could re-file the motion to certify a damages class within three weeks. The County finds fault in Arreola's failure to do so, but that is only part of the story. In fact, Arreola froze that issue in the district court by filing his motion under Rule 23(f) with this court and asking us to review the district court's decision to deny certification under both subsections of Rule 23(b). Once we granted that motion, the issue of class certification was no longer before the district court, and so there was nothing for Arreola to do but to see it through here.

When we turn to the district court's ruling, we see that in fact there is no definitive decision granting or denying certification of the proposed Rule 23(b)(3) class. The court's order of January 30, 2007, said only:

> The Court denies, without prejudice, Arreola's motion to certify a class on his claims for damages. It is readily apparent that the Court's rationale for denying sum-

mary judgment on Arreola's official capacity claims impacts the issues of the typicality of Arreola's claims, whether class issues predominate, and whether a class action is a superior method for fair and efficient adjudication of the controversy.

Thus, the court expressed doubt about whether Arreola could satisfy various requirements of both Rule 23(a) and Rule 23(b)(3), namely, typicality, commonality, predominance of class issues over individual ones, and the appropriateness of using the class-action device to resolve these claims.

The parties' briefs on appeal offer complete arguments on the question whether the district court abused its discretion in denying Arreola's motion for certification of a damages class. That jumps the gun, in our opinion, because the district court did not issue a definitive ruling. We do not even know whether the district court was thinking of trying Arreola's individual claim for damages first, and then seeing whether class certification was proper, although we doubt that this was the court's plan, given the command in Rule 23(c)(1)(A) that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." (In any event, it should not have been the plan: Rule 23 does not create a form of one-way intervention under which class issues need not be reached unless or until the plaintiff has won or almost won.)

At most, the district court has expressed some skepticism about Arreola's ability to satisfy the criteria

for a damages class action. In a hearing that took place the same day it issued its order, January 30, 2007, the court questioned "whether Mr. Arreola's claims are typical, whether a class action is a good way of dealing with this." The court also commented that

> any time you have got a class action involving damages, there is a fairly obvious issue about whether the likelihood of having to have individual damage hearings overwhelms the good that would come out of having a class action.

Taken to its limit, this observation would mean that there is never a proper class action under Rule 23(b)(3), but that is obviously not the case. We note that even if each damages calculation will be fact-bound to some degree, many of the issues involved in this case, as we have noted already, would be common among all potential class members. It is also worth recalling that Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just "class claims," but also class "issues." See also Rule 23(c)(2)(B)(iii) (addressing notice of "the class claims, issues, or defenses").

Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts. See *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues."). It would be premature for this court to express

an opinion one way or the other on the suitability of Arreola's case for (b)(3) class treatment. Our only point here is that the need for individual damages determina- tions does not, in and of itself, require denial of his motion for certification. See, *e.g.*, *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 472 (7th Cir. 2004); *In re Visa Check/ MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001).

## IV

The district court's denial of class certification under Rule 23(b)(2) is AFFIRMED. On the understanding that the court has, as yet, made no definitive ruling on Arreola's motion for certification under Rule 23(b)(3), we REMAND for further proceedings consistent with this opinion on that motion. Finally, bearing in mind the need for a timely decision on class certification as required by Rule 23(c)(1)(A), we also REMAND for further proceedings consistent with this opinion in Arreola's individual case for damages. Each party shall bear its own costs on appeal.